First case this morning is Jarke and Schaefer v. Mondry. That's 4-1-1-0-1-5-0. For the appellant we have James Brinkheder and for the appellee Robert Stewart. Ready to proceed? Sure. May it please the court, James Brinkheder for the appellants. Krista Kohn and Brandy Mondry presented affidavits to the court in this case alleging that, in the case of Krista Kohn, alleging that Mr. Schaffernacker confided in this 17-year-old girl, who's a roommate of Brandy Mondry's daughter, that Anthony Schaefer was not his son. Brandy Mondry submitted an affidavit that she had overcurred seven years beforehand or thereabouts that there was a conversation in which a third party asserted to the petitioner's plaintiff's mother that Anthony Schaefer was not Mr. Schaffernacker's son. These affidavits are easy to devise and the variance on affidavits such as these are infinite. If any affidavit can be presented that justifies a Rule 215 examination for blood tests, etc., then there's no point in even talking about a presumption of legitimacy. Just have everybody show up at the probate court and have a buccal swab and then have the assets of the deceased distributed according to who is or who isn't the biological offspring of the person's described in the affidavit. For many, many years, for hundreds of years, the system of our laws has been to presume that during a marriage, the children born during the marriage are the lawful offspring of the parents. The only way that the presumption of legitimacy could be overcome would be upon a showing that the father was away and no access to the mother or that the father was incapable of procreation. Why not put... If an affidavit is presented that establishes one of the two criteria, or let's suppose that we have a recessive gene situation, two blue-eyed parents and a brown-eyed child, such as... I'm sure that under those circumstances, that a court could step aside and say, well, in this particular case, because the facts are such and so, that we have a brown-eyed child and two blue-eyed parents, well, in those circumstances, 215 should apply and I will order a blood test, etc. Or in the case of... And yet, such an affidavit would not establish either of the two principles that you just cited. No, that's true. That's true. And I'm not saying that the affidavits that give rise to a 215 examination should be just limited to those circumstances. There can be others. Obviously, some racial characteristics can exist in certain situations. But whereas we have here, we have none of those type of things. We just have some ancient comment of seven years or thereabouts beforehand, and then we have a 17-year-old roommate of Brandy Mondry asserting that a 67-year-old man told her that her son Anthony was not... To me, if these affidavits give rise to good cause, then any comment can give rise to good cause. The court, in its comments... According to what you're saying, if I leave property to my three kids and it turns out my wife and I have blue eyes and one of the kids has brown eyes, you're saying that the other kids can get a DNA test? I would hope not, but I assume that if one of them... What if I left the property to my three children and named the three children? Well, then obviously there would be no reason to even address the biological relation. For instance, I could give my property to my three kids and the Lutheran Church or the Catholic Church. That is, the issue of biological relation would not come into play here. If I say, I'll leave my property to my three children, Brian, Greg, and Julie, then what controls, the word children or the name? I think the intent of the testator controls. The intent of the testator would be that my children and by the names would inherit. But in this particular case, Brandy has taken advantage of the fact that her grandmother and grandfather, years before, described heirs of my body or some such language. That she is now going to, years after... Well, right after the death of Howard Schaffenacker, she is going to challenge the legitimacy of her brother by these affidavits. Without actually broaching the question of whether Mr. Schaffenacker had access to Joyce Schaffenacker during the time that Tony, the middle child, was conceived. And I would suggest to this court that if an affidavit at that time can justify a 215 examination, then it can justify an examination in every case. And that is the point of this appeal. The fact is... Isn't it a little difficult to apply the common law presumption in this modern day and age when we have DNA testing? But why do we just look to if you're beyond the four C's and if you're denied access? Well, if that is the rule of law that we are to embark on, then just throw out the presumption of legitimacy altogether. And just have everybody go to the court with a butyl swab, turn it in, and if they pass the DNA test, they inherit. If they don't pass it, they don't inherit. If that's what the existence of sophisticated DNA testing and paternity testing... If that's what it's come to, then why even consider the presumption of legitimacy? Throw it out altogether. I suggest that legitimacy is something that we need to keep in the... Even though it's an ancient presumption, it's a presumption that has served well and would avoid these very types of disputes. Well, as Judge Turner said, you don't want to keep the presumption. You want to change it to... No, I don't. Recessive gene, two blue eyes, one brown eye, which doesn't fit under the presumption. I understood the judge's question to be addressing is the only criteria that can justify a DNA test test under Rule 215, a physical examination test, is it whether the father had access to the mother and whether the father could appropriate it. If that is... I would assume that there's no hard and fast... I would assume that... And I would argue and urge the court to require as a predicate to any 215 examination that the criteria that the common law sets forth for challenging the legitimacy of a child, that that be followed. And if there is some other compelling... What criteria? That the father did not have access to the mother during the time that the child was conceived, or that the father could not conceive because he could not appropriate. And those are the two things that I think... One of those two things must be addressed. And I urge the court to rule that one of those two things must be addressed by the affidavits. That's inconsistent with your blue-eyed, brown-eyed... It is. But you ask me, is that the only time that a DNA test should be offered? And I am trying to visualize exceptions to that requirement, and possibly something that is just as compelling as the nose on your face, such as two blue-eyed parents not being able to conceive, a brown-eyed child, or some racial thing. There might be an exception to that requirement. But in my estimation, the requirement should be met in every case, unless there's some other compelling additional criteria to justify a 215 examination. And I didn't mean to try and trample on the presumption that I'm trying to rely on in my case. But you asked me that question, and I thought possibly there might be other circumstances. But I think that Brandy Mondry, the defendant here, has to put something in an affidavit that justifies Judge Harris's ruling that 215 exams should be issued. And the judge said here in his ruling that the court previously noted that the threshold for ordering the implementation of a 215 examination is not a particularly high one. Simply, the court believes that if it is likely to lead to discoverable evidence, that bid cost has been presented for its use. And I think that that is error, and I ask the court to resolve it. Thank you, counsel. We'll have rebuttal. Mr. Stewart? Thank you, Judge. We are here on an order coming under Rule 215, Discovery, and the determination that good cause existed for the DNA samples to be secured. That is the only order that's before us and that was appealed from. The question pertains to the content of the affidavits. And if you look at the affidavits, they specifically set forth that the mother of Brandy Mondry was overheard by Brandy saying, Tony is not his son. And then a third party has said that Howard Schaffernacher stated to her that Tony was not my son. Those are the comments that are made. Those are the basis of the trial court. So basically we can have a DNA test in every case, every probate action from now on? All you have to do is file an affidavit? What I'm saying is that there were admissions against interest on the part of or admissions by Howard Schaffernacher to a third party and admissions against interest by the mother. Well, hearsay. So all the kid has to do is say, my dad said he wasn't the father. And then, bang, you have a DNA test. Well, you do have the third party who heard it. A 17-year-old roommate, right? Your Honor, there are many constructions that counsel has thrown out to the court in regard to the character of this young lady who is now an adult. No depositions have been taken of her. I would disagree with the, quote, roommate who resided in the same house. Putting that aside, though, she's a friend of Brandy, correct? Correct, Your Honor. She's not an independent witness? She is not totally independent. Right, okay. So, again, in answer to my question, we're going to have a DNA test in every probate action where there's a fight among siblings. All you have to do is file your affidavit. If you're saying that everyone is going to file false affidavits, that could lead to that. Your Honor, I do believe, however, that the question comes as to good cause. I don't believe that the General Assembly or the courts have limited the examination and the presumption of legitimacy. And it is not conclusory. And in discovery, it is not conclusory. It is rebuttable. And if the court, the trial court, in its discretion finds good cause, then it may proceed under the statute, the Paternity Act, which governs not only paternity actions, but any actions brought in the civil courts which raise the issue of paternity. And that's what we are dealing with here. I just feel like it's unusual to have a sibling, after everybody's reached adulthood, be allowed to come in and challenge the legitimacy of her brother. She's never had an opportunity or a reason to challenge that paternity. But under the Paternity Act, she wouldn't be allowed to do that. She would have no standing under the Paternity Act. But what we're getting to here is the right of inheritance from one generation beyond. Florence Schaffenacker left in her will a life estate to Howard Schaffenacker, remainder on his death to his descendants. To his surviving bodily lineal descendants. Were you able to find any cases, Mr. Stewart, that limited or used genetic testing to limit a legitimate child from taking? What do you mean? So in other words, would you agree with this, that a limitation to blood descendants has never been applied based on genetic test results to exclude from a class gift a person born into wedlock who would otherwise qualify as a beneficiary of the class gift? Did you find any case anywhere in the country where genetic testing was allowed to exclude a legitimate child as a person not a bodily lineal descendant? Your Honor, I cannot recall a specific case. I guess what I'm getting at, if surviving bodily lineal descendants would include children of the marriage of Howard and the mother, I can't remember coming off the top of my head. Isn't that the end of the question? Why does the General Assembly and why have the courts allowed for blood testing and DNA testing to be put into the statute? In the paternity statute? In the paternity statute. Why have they acknowledged that? Let me talk to you about that for a minute. It says any party may request DNA testing. And then it defines parties. The mother, the father, the child, or the putative father. That's it. Your client doesn't fit in any of those categories. But the Act goes on in a separate section to refer to any civil action not necessarily brought under that Act that the provisions of the Parentage Act and the testing allowed there and the rebuttal of the presumption of legitimacy can apply and do apply to any other civil action. What section is that? I believe that is section 45-9. Hold on just a minute. 45-9. It says the circuit court shall have jurisdiction of an action brought under this Act. In any civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue. That's what we have in this case. But you're saying the rule as to who may bring the action in the Parentage Act doesn't apply. What I'm saying is that the tests that are allowed to determine parentage, the DNA testing and the blood testing, do apply. But then you're excluding other portions. Doesn't that read that the Parentage Act applies, the provisions of the Parentage Act apply in other civil actions where paternity is at issue? So isn't that all of the provisions of the Parentage Act? I believe that there are cases which we didn't get into in the trial court that say that in regard to public aid and other issues that a child is not excluded from raising that in a separate issue when it's been litigated in a divorce situation. I would cite to the court Department of Public Aid, X. Ralph Stark v. Wheeler, 248 Illamp III, 749, to the effect that you can argue that the Illinois Parentage Act case law suggests that the children, their parents, and Illinois Department of Public Aid are not in privity with one another so that parentage proceedings initiated by one don't preclude the others from bringing later actions. Right, but that doesn't include siblings. It's the parents and the child, right? Correct. We went through all this with, I remember in divorce cases years ago, everybody was wondering what's going to be the effect of all this modern DNA testing. And then the cases under the Divorce Act, where the father, the apparent father, doesn't raise the issue for years, then during divorce he says, oh, I'm not the father, I don't have to pay child support. You can't do that. There's a two-year limit. And they talk about the policies. You know, it's wrong to raise a child as part of a family and then years later say, oh no, you are not the child. I think that is present in one or two of the cases cited by opposing counsel. But what we have here is one generation beyond. Florence Schaffenacker leaving a document that says, life is staked to my son, but I want my lineal descendants to receive those farms. Didn't she consider Anthony to be a lineal descendant? There's no determination, there's no statement by her that he was considered by her as her son. He had been born at the time she wrote her last codicil to her will. If she had any questions about it, why wouldn't she have said something about it in her will? But she said lineal descendants. If she wanted to totally clarify it, she would have said Anthony, Brandy, and Michelle. Well, to the world, he is a lineal descendant, isn't he? To anybody looking in on that family, he's a lineal descendant of Florence's. But he is not a bodily lineal descendant. We don't know that. You're saying that. You have these affidavits. But as far as anybody was concerned, in the family even, as far as we can tell, except for these affidavits that you've produced. Well, I think the affidavits speak for themselves as to a statement by the Howard Schaffenacher that he did not consider Tony his son. How about Joyce's evidence deposition? That kind of speaks for itself, doesn't it, under oath? You can also, opposing counsel has been arguing that the credibility of Brandy in getting this affidavit should be questioned. I can question the same thing coming back from a mother of three children, and if there was a child born of her that was fathered by another individual, she would still want all three of her children to participate in the division of the farms. The credibility question arises in that same situation. Did you take part in the deposition? No, I did not. Was she asked questions by counsel from both sides? Yes, Your Honor. Well, it seems to me to be a little different than just somebody filling out an affidavit. At least she's been subject to direct, cross, redirect. And apparently her evidence deposition was abundantly clear that all three children were of Howard's, correct? I believe so, Your Honor. When Howard died, did he leave a will? I don't believe so. Did these kids inherit anything from Howard? There is a probate proceeding in the state of Florida where he died, and there has been no determination at this point as to who his heirs are. There is a petition on file, and there were orders granted to Brandy Mondry to act as administrator. But there has been no determination by a Florida court, I don't believe, in regard to the heirship. The petition that was filed by Brandy set forth two named individuals as children of Howard. So you say he died intestate then? I believe so. How about the 1983 probate in Logan County? You mean Florence Schaffenacker's probate? Yes. Were there any determinations made by the court overseeing that probate? The only determination was an order declaring heirship, stating that Howard Schaffenacker was her only heir as the only child. There was no court order saying that real estate would pass into a life estate, remainder to X, Y, and Z. I don't recall. Was there an executor's deed? No, I don't believe so. I think there was an inventory file in the probate proceeding. But there was, to my knowledge and recollection, there was no finding of heirship beyond Howard Schaffenacker, and that's the normal in probate. I do believe that the General Assembly, in enacting the Paternity Act, did account for the new concepts of DNA testing. I believe Illinois case law states that ultimately that blood test or DNA testing can constitute irrefragable proof. The question comes as to what constitutes in the discretion of the trial court under Rule 215 good cause. I think the court is struggling with those affidavits. I recognize that. But I do believe that you have to leave it to the discretion, or I would feel that the trial court should be given that broad discretion to determine good cause. The court will ultimately have to determine the results of those tests and the acceptance and the proof created. But there are, as we cited in the trial court memos, and is present in the Happel case, blood tests are a matter of discovery regulated under Supreme Court Rule 215. The trial court has broad discretion to order a party to submit to a blood test. Well, let me ask you this. A father, well, he's getting a divorce, and he says his 10-year-old kid is not his. Does Rule 215 allow a DNA test? I think the cases and the circumstances surrounding that, and one case that is cited is a Pennsylvania case, a Pennsylvania Supreme Court case, where an individual is married and five years after the birth of a child that he has shown his name on the birth certificate, he has provided support, he later comes to the court and says, no, he's not my child. I think that was the basis of the Pennsylvania Supreme Court saying, we aren't going to allow that on blood tests. In effect, you're stopped from denying. The answer to my question is, Illinois law provides a two-year time limit in that situation. The Paternity Act does. And it says the father cannot raise that issue. Once he's let the family go on for all those years, he can't bring it up in an attempt to deny child support. So your argument that 215 is absolute controls isn't quite right. There are other considerations besides the language of Rule 215. But in this case, we aren't dealing with the support requirements of the father or the individual who has acknowledged that in the child. We're dealing with the disposition of property of a generation beyond and the fact that descendants cannot be determined until the death of Howard Schaffernacher. Aren't we dealing, though, with policies like preservation of family integrity, avoiding the stigma of illegitimacy, and even protecting a child's inheritance rights? Think about the situation where a kid is raised as a member of the family for 40 years. He thinks he's going to be coming into this piece of property. And then all of a sudden, bang, out of the blue comes this DNA test. Isn't that a real shock to individuals? It might be a shock, but when else would Brandy Mondry have an opportunity to raise this issue? I'm not sure she ever should. Why should she ever have that opportunity? Because her grandmother left in her document that her bodily lineal descendants should inherit that ground. That language, which has been around for years, existed even while we had the presumption against illegitimacy. It was designed to exclude adopted children, and adopted children are no longer excluded. The statute clearly says that. Descendants include adopted children. But there is an exception on the stranger to the adoption. In other words, if Howard Schaffernacher had gone out and adopted a child who was 25 years old, that child adopted at age 25 and who had no prior relationship with Howard Schaffernacher would not be seen. But when you say, by using the term lineal descendants, she wanted to exclude any illegitimate children of Howard's marriage, I don't think that's right. I'm not saying illegitimate children of Howard. I am saying lineal descendants, and we are arguing that Howard did not procreate that child. He was married to the mother. He raised the child as his own. So you think the blood relationship controls everything? In this situation, I believe the language says bodily lineal descendants. But again, that language was used for many years, before we even had DNA testing. And what was the sense of that language back then, when the presumption of legitimacy absolutely controlled? I think when you get in... It excluded adopted children. That's why it was there. I acknowledge the changes in the law on illegitimacy and adoptives. I also acknowledge that when Florence Schaffernacher grafted her will, her intent, as expressed in that document, was for lineal bodily descendants. Did she think that that term meant the children of Howard? I... The full-blood children of Howard. And I realize you get into the argument of illegitimacy and adoptives. Thank you. Thank you, counsel. Rebuttal, please. I ask the court to consider that the affidavit I'm sorry, that the evidence deposition of Joyce Schaffernacher Joyce... Actually, her name was not Schaffernacher at the time of the affidavit of the deposition, but that the... that Brandy had ample opportunity to challenge the legitimacy of Anthony at that deposition, and there is not a single syllable in the deposition challenging... Why didn't that convince the trial court? I wish I could tell you that, Judge. I felt that the court was... Did you ever argue to Judge Harris that DNA testing was not needed because, regardless of what it showed, Anthony should still be considered a lineal descendant? Or did you ever get to that point? Never got to that point. I was attempting to get the judge to deny the 215 examination request, and I felt that we were on solid ground as far as the content of the affidavits as well as the other question as far as the fact that these samples that Brandy had in her possession are just not going to be acceptable to use as a paternity index because she has basically tarnished those beyond repair. And so that was the basis of our objections to the motion. I feel that the court did use its discretion by basically granting the order, making the order that the blood tests be submitted, and I think that the court thought that the good cause was a requirement or threshold for ordering the 215. The implementation of the 215 examination is not a particularly high one, and I feel that this presumption of legitimacy is a very strong presumption and that the court should not have ruled that it wasn't a high requirement. So therefore, we ask this court to find that our clients, my clients should not have been held in contempt of court for not complying with the order. Thanks to both of you. The case is submitted. The court stands in recess until 10 o'clock.